# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

THE GIVING BACK FUND, INC.
        Plaintiff

    -v-

MARK STEVERSON, RUDOLPH & BEER,
LLP, LAURENCE H. RUDOLPH and
CORINA BIGGAR
        Defendants

CIVIL ACTION NO. 02-CV-104446 RWZ

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT

Peabody & Arnold LLP
Attorney for Defendants
50 Rowes Wharf
Boston, MA 02110

Of Counsel:

    Michael Duffy, Esq.
    Paul Muniz, Esq.

    Barry J. Brett, Esq.
    Michael D. Friedman, Esq.
    Jenkens & Gilchrist Parker Chapin LLP
    405 Lexington Avenue
    New York, New York 10174
    (212) 704-6000



# TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF CASE ....................................................................................... 3

    THE PARTIES .................................................................................................. 3

    THE COMPLAINT ........................................................................................... 3

ARGUMENT .......................................................................................................... 5

  I.    THIS COURT LACKS PERSONAL JURISDICTION
      OVER THE DEFENDANTS ...................................................................... 5

      A.    The Standards On A Motion To Dismiss
           For Lack Of Personal Jurisdiction ............................................ 5

      B.    There Is No General Jurisdiction ............................................... 6

      C.    There Is No Specific Jurisdiction ............................................. 7

  II.  THE STANDARDS ON A MOTION TO DISMISS
      FOR FAILURE TO STATE CLAIM .......................................................... 8

      A.    The Court Is Not Bound By Conclusory
           Or Non-Factual Allegations....................................................... 8

      B.    The "Contractual" Allegations Are
           Particularly Unavailing To Plaintiff......................................... 9

  III.  THE RIGHT AND DUTY TO ADVISE THEIR CLIENTS
       PRECLUDE THE CLAIMS HERE ASSERTED AGAINST
       THE LAWYER DEFENDANTS ........................................................... 9

  IV.  THE CONDUCT HERE ALLEGED CANNOT BE FOUND
       TO BREACH ANY FIDUCIARY DUTY TO GBF ..................................... 11

      A.    A Claim Of Breach Of Fiduciary Duty
           Requires Some Showing of Self Dealing ................................. 11

      B.    The Allegations Regarding Steverson's Conduct
           Do Not Amount To a Breach Of Any Duty To GBF ........................... 12

           C.        The Claim Against Biggar (Count V)
                    Is Particularly Unseemly And Untenable ...............................................13

V.       NO CLAIM IS STATED REGARDING R & B OR RUDOLPH .................13

           A.        There Is No Vicarious Liability Claim Against R & B.........................13

           B.        Rudolph Is Not Vicariously Or Otherwise Liable For Anything ........14

           C.        Plaintiff's Causes Of Action For Aiding And Abetting
                    Against Rudolph & Beer, LLP And Rudolph Are Also
                    Deficient As A Matter Of Law..................................................................14

VI.      GBF'S CLAIM FOR INTERFERENCE WITH CONTRACTUAL
         OR BUSINESS RELATIONS IS DEFICIENT AS A MATTER
         OF LAW .........................................................................................................15

           A.        GBF Fails To State A Claim For Interference
                    With Contractual Relations .....................................................................15

           B.        GBF Fails To State A Claim For Tortious Interference
                    With Advantageous Business Relationships...........................................16

VII.    GBF CAN HAVE NO RIGHTS TO PREVENT OTHERS
         FROM USING THEIR OWN NAMES ...........................................................17

VIII.   THE CAUSE OF ACTION FOR CONVERSION
         IS ALSO DEFICIENT.....................................................................................18

IX.     GBF CANNOT DEMONSTRATE ANY VIOLATIONS
         OF MASSACHUSETTS GENERAL LAW CHAPTER 93A..........................19

CONCLUSION ......................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

**American Investment Co. v. Lichtenstein,**
134 F. Supp. 857 (E.D. Mo. 1955) ............................................................................12

**American Private Line Services, Inc. v. Eastern Microwave, Inc.,**
980 F.2d 33 (1st Cir. 1992) ................................................................................ 15-16

**Banks v. Everett National Bank,**
305 Mass. 178 (1940) ............................................................................................15

**Barrett v. Lombardi,**
239 F.3d 23 (1st Cir. 2001) ..............................................................................6, 8

**Baystate Technologies v. Bentley System, Inc.,**
946 F. Supp. 1079 (D. Mass. 1996) ..........................................................................17

**Berman v. Coakly,**
243 Mass. 348 (1923) ............................................................................................10

**Blackstone Realty LLC v. FDIC,**
244 F.3d 193 (1st Cir. 2001) ....................................................................................4

**Boston Beer Co. v. Slesar Brothers Brewing Co., Inc.,**
9 F.3d 175 (1st Cir. 1993) ......................................................................................17

**Bradley v. Dean Witter Realty , Inc.,**
967 F. Supp. 19 (D. Mass. 1997) ..............................................................................20

**Brandt v. Hicks, Muse & Co. (In re Healthco International, Inc.),**
213 B.R. 784 ( D. Mass 1997) ................................................................................14

**Brandt v. Hicks, Muse & Co. (In re Healthco International, Inc.),**
208 B.R. 288 (Bankr. D. Mass 1997) ........................................................................14

**British Printing & Communication Corp. v. Harcort Brace Jovanovich, Inc.,**
664 F. Supp. 1519 (S.D.N.Y. 1987) .................................................................... 11-12

**Burger King Corporation v. Rudzewicz,**
471 U.S. 462 (1985) ..............................................................................................7

**Callahan v. Harvest Board International, Inc.,**
138 F. Supp.2d 147 (D. Mass 2001) .................................................................... 6-7, 8

**Cecconi** v. **Cecco, Inc.,**
739 F. Supp. 41 (D. Mass 1990) ................................................................11

**Cigna Fire Underwriters Co., v. Macdonald & Johnson, Inc.,**
86 F.3d 1260 (1st Cir. 1996) ...................................................................15

**Clorox Co. v. Proctor & Gamble Commercial Co.,**
228 F.3d 24 (1st Cir. 2000)......................................................................4

**Commercial Union Insurance Co. v. Seven Provinces, Insurance Co. Ltd.,**
217 F.3d 33 (1st Cir. 2000),
cert. denied, 531 U.S. 1146 (2001) ...........................................................19

**Crouse-Hinds Co. v. InterNorth, Inc.,**
634 F.2d 690 (2d Cir. 1980) ...................................................................12

**D'Angelo v. Boston Red Sox Baseball Club Ltd.,**
2001 U.S. Dist. LEXIS 18233 (D. Mass. 2001) ........................................19

**Dartmouth Review v. Dartmouth College,**
889 F.2d 13 (1st Cir. 1989) ................................................................. 8-9

**Day v. Fallon Community Health Plan, Inc.,**
917 F. Supp. 72 (D. Mass. 1996)................................................................8

**Demoulas v. Demoulas Super Markets, Inc.,**
424 Mass. 501 (1997) ...........................................................................11

**Dunne & Others v. Cunningham,**
234 Mass. 332 (1920) ...........................................................................10

**Export Lobster Co. Inc. v. Bay State Lobster Co., Inc.,**
1994 Mass. Super. LEXIS 90 (1994).........................................................16

**Foss Manufacturing Company, Inc. v. Malden Mills Indus., Inc.,**
1999 Mass. Super. LEXIS 378 (1999) ......................................................19

**Foster-Miller, Inc. v. Babcock & Wilcox Canada,**
46 F.3d 138 (1st Cir. 1995) ...............................................................5, 7

**Fudge v. Penthouse International Ltd. ,**
840 F.2d 1012 (1st Cir.),
cert. denied, 488 U.S. 821 (1988) .............................................................4

**G.S. Enterprises, Inc. v. Falmouth Marine, Inc.,**
410 Mass. 262 (1991) ...........................................................................16

iv

**Giuliano & Lett v. Nations Title,**
  1998 U.S. App. LEXIS 1136 (1st Cir. 1998) .................................................................9

**Goldman v. Kane,**
  3 Mass. App. Ct. 336 (1975) .......................................................................................10

**Gooley v. Mobile Oil Corp.,**
  851 F.2d 513 (1st Cir. 1988) .........................................................................................9

**Guckenberger v. Boston University,**
  957 F. Supp. 306 (D. Mass. 1997) ...............................................................................8

**Held v. Zamparelli,**
  13 Mass. App. Ct. 957 (1982) .......................................................................................9

**I.P. Lund Trading v. Kohler Co.,**
  163 F.3d 27 (1st Cir. 1998) .....................................................................................17-18

**International Shoe Co. v. Washington,**
  326 U.S. 310 (1945) ......................................................................................................6

**Kaufman v. Lennox,**
  265 Mass. 487 (1929) ....................................................................................................9

**King v. Driscoll,**
  418 Mass. 576 (1994) ..............................................................................................16-17

**Kleinerman v. Morse,**
  26 Mass. App. Ct. 819 (1989) .......................................................................................8

**Lamare v. Basbanes,**
  418 Mass. 274 (1994) ..................................................................................................10

**Lewis v. Rosenfeld,**
  138 F. Supp.2d 466 (S.D.N.Y. 2001) ..........................................................................14

**Logotheti v. Gordon,**
  414 Mass. 308 (1993) ..................................................................................................10

**Lyle Richards International v. Ashworth, Inc.,**
  132 F.3d 111 (1st Cir. 1997) ..........................................................................................6

**Massachusetts School of Law v. American Bar Association,**
  142 F.3d 26 (1st Cir. 1998),
  cert. denied, 522 U.S. 907 (1997) ..........................................................................5, 7, 8

v

**McCall v. Scott,**
    239 F.3d 808 (6th Cir. 2001) ........................................................................11

**Nickless v. Golub,**
    152 B.R. 394 (Bankr. D. Mass 1993) ..........................................................11

**Page v. Frazier,**
    388 Mass. 55 (1983) ....................................................................................10

**Pritzker v. Yari,**
    42 F.3d 53 (1st Cir. 1994),
    cert. denied, 514 U.S. 1108 (1995) ...............................................................7

**Puritan Medical Center v. Cashman,**
    413 Mass. 167 (1992) ..................................................................................12

**Robinson v. Watts Detective Agency, Inc.,**
    685 F.2d 729 (1st Cir. 1982),
    cert. denied sub nom, Consolidated Services Corp. v. Robinson,
    459 U.S. 1105 (1983) ...................................................................................11

**In re Safety International, Inc.,**
775 F.2d 660 (5th Cir. 1985) ..............................................................................11

**Saxon Theatre Corp. v. Sage,**
    347 Mass. 662 (1964) ....................................................................................9

**Schlecht v. Smith,**
    1994 U.S. Dist. LEXIS 16167 (D. Mass. 1994) .........................................10

**Serpa Corp. v. Mcwane, Inc.,**
    199 F.3d 6 ( 1st Cir. 1999) ...................................................9, 16, 17, 19

**Smith & Croyle, LLC v. Ridgewood Power Corp.,**
    111 F. Supp. 2d 77 (D. Mass 2000) ...........................................................17

**Solash v. Telex Corp.,**
    1988 Del. Ch. LEXIS 7 (1988) ..................................................................14

**Spinner v. Nutt,**
    417 Mass. 549 (1994) .........................................................10, 14, 15

**Stein v. Royal Bank of Canada,**
    239 F.3d 389 (1st Cir. 2001) ........................................................................4

**Teitelbaum v. Hallmark Cards, Inc.,**
25 Mass. App. Ct. 555 (1988) ................................................................................9

**Ticketmaster, Inc. v. Alioto,**
26 F.3d 201 (1st Cir. 1994) ................................................................................5, 6

**Topp v. Compare, Inc.,**
814 F.2d 830 (1st Cir. 1987) ............................................................................. 5-6

**United Truck Leasing Corp. v. Geltman,**
406 Mass. 811 (1990) .....................................................................................15, 16

**Veranda Beach Club Ltd. v. Western Surety Co.,**
936 F.2d 1364 (1st Cir. 1991) ..............................................................................13

**Viron Int'l Corp. v. Baker Brothers/Sys.,**
1998 Mass. Super. LEXIS 23 at 18 (1998) ..........................................................18

**Wang Laboratories, Inc. v. Business Incentives, Inc.,**
398 Mass. 854 (1986) ..................................................................................... 13-14

**Whitinsville Plaza, Inc. v. Kotseas,**
378 Mass. 85 (1979) ..............................................................................................19

**Worcester Insurance Co. v. Fells Acres Day School, Inc.,**
408 Mass. 393 (1990) ............................................................................................13

**Wujnovich v. Colcord,**
105 N.H. 451 (1964) ..............................................................................................18

**Yankee Spirits, Inc. v. Gasbarro,**
1998 U.S. Dist. LEXIS 22159 (D. Mass 1998) ...................................................17

**Zayre Corp. v. Computer System of America, Inc.,**
24 Mass. App. Ct. 559 (1987) ......................................................................... 19-20

## STATUTES and RULES

15 U.S.C. § 1125 (a) ........................................................................17

I.R.C. § 501 (c) (3) ..........................................................................3

F.R. Civ. P. Rule 12 (b) (2) ...............................................................1

F.R. Civ. P. Rule 12 (b) (6) ........................................................ 1-2, 8

Mass. Gen. Laws ch. 93A §§ 2 and 11 ..............................................19

Mass. Gen. Laws ch. 223A, §§ 3(a) (c) and (d) ...................................5

N.Y. Partnership Law § 26 ..............................................................14

## OTHER AUTHORITIES

Restatement (Second) of Agency § 228 (1958) ...................................14

This memorandum is respectfully submitted on behalf of the Defendants Mark Steverson ('Steverson'), Rudolph & Beer, LLP ('R&B'), Laurence H. Rudolph ('Rudolph') and Corina Biggar ('Biggar') in support of their motion to dismiss the Complaint pursuant to F.R. Civ. P. Rules 12 (b) (2) and 12 (b) (6). This action was removed to this Court from the Superior Court of Massachusetts based on diversity of citizenship and the federal question posed by Count XI[1].

## PRELIMINARY STATEMENT

Given all the deference due to a complaint on a motion under Rule 12 (b) (6)[2], it is apparent that beyond the inflammatory rhetoric and conclusory labels, the complaint involves a challenge to the efforts of two well known young entertainers to undertake and direct charitable activities through their own foundations independent of the plaintiff, with which they had a brief and limited relationship. The performers are not defendants, there is no claim of breach of contract, and any relationship which they had with plaintiff was non exclusive and was terminable at will. The lawsuit is based on the premise that, because he was allegedly named to the Board of Directors of plaintiff, a lawyer employed by the firm representing these performers had a fiduciary obligation to plaintiff which precluded others in his firm (impliedly with his involvement) from advising or assisting their clients to exercise their rights to establish independent personal charitable foundations and to terminate the relationship with plaintiff. It is not alleged that the lawyer or his firm have earned fees or other benefits which would otherwise have been earned by plaintiff or that they compete with plaintiff. Plaintiff asserts claims against the lawyer, the law firm by which this lawyer was employed and which represented the two

---

[1] This memorandum assumes that Massachusetts substantive law applies to most matters.
[2] For purposes of the motion under Rule 12(b) (6), this memorandum reflects the "facts" as set forth in the complaint, with the reservation that all recitations here contained are solely to frame the issues and are subject to

(continued )

performers, as well as against a name partner in the firm who is not alleged to have done anything. A former employee of plaintiff is also sued for having left plaintiff's employ and subsequently working for the new independent foundations. Plaintiff seeks (i) damages of almost $15,000,000 for itself - - a fanciful claim by an organization which gets a maximum fee of 5% of amounts donated for its services in administering charitable foundations for philanthropic individuals; and (ii) a pre-suit settlement payment well in excess of $1.5 million and other consideration to avoid "adverse publicity" regarding the two performers.[3]

After addressing jurisdictional issues, we set forth authorities which demonstrate that none of the claims is legally tenable. We urge that all claims be read (i) in light of the absence of any suggestion that the lawyer was disloyal to the clients or sought personal gain; (ii) the absence of any relationship with plaintiff or duty on the part of R & B or Rudolph; and (iii) a demonstrable effort to use litigation and the threat of "adverse publicity" to extract tribute in an amount beyond the wildest imaginable damages. We submit that it cannot be found unlawful for a lawyer who serves on a philanthropic board to advise clients on alternate charitable activities and any contrary view would both improperly chill the role of lawyers in public service activities and involve the judiciary in judgments which do not belong in the courts. To allow such a claim to survive against the law firms of a director would likely impel all firms to limit public service activities by their lawyers.

------------------------

(..continued)

dispute in an appropriate context. The motion to dismiss for lack of jurisdiction is supported by sworn statements of the defendants.

[3] See Letter dated February 19, 2002 served with the Complaint attached to the Affidavit of Paul Muniz in support of the motion.

## STATEMENT OF CASE

## THE PARTIES

The Giving Back Fund, Inc. ("GBF") is a charitable corporation to which contributions qualify for tax deductions under § 501 (c) (3) of the Internal Revenue Code. (Compl. ¶ 1). It is not, however, the more familiar form of charitable organization which exists to raise money for some single use such as The American Cancer Society, a religious or educational institution, etc. Rather, for a fee, it provides a structure which receives funds generated or donated by a prominent donor and administers a charitable account in the name of that donor. The donor is thus able to raise funds and participate in decisions directing the funds to favored donees, unrelated to the activities of other donor-advised funds established with plaintiff. (Compl. ¶ 1, 7, 10). The objective is to avoid the costs and burdens of creating and administering a charitable foundation while getting a pre-approved I.R.C. § 501 (c) (3) umbrella.

Mark Steverson, is a New York lawyer employed by R & B, a New York law firm specializing in entertainment law, which represents prominent performers in the music industry. Rudolph is a New York lawyer who is a member of R & B. Defendant Corina Biggar is a former employee of GBF. Steverson is alleged to have been a member of the Board of Directors of GBF from March of 2000 to January of 2002. (Compl. ¶¶ 2-5). It is not alleged that he was compensated for these activities or performed any services, or even that he attended any meetings of the Board.

## THE COMPLAINT

In late 1999 two clients of R & B entered into Donor Agreements with GBF, to which the Complaint refers only in conclusory terms. The material terms of the "contracts" such as the parties, date of the contracts, whether they were oral or written, the duration, means of termination, the obligations, etc. are not set forth. It is alleged that it was 'understood and agreed'

-3-

that each of the two clients was to contribute at least $250,000 to a foundation in "his or her name" and there was an unspecified fee schedule (Compl. ¶¶ 7-10). In fact, the 'clients' are Britney Spears and Justin Timberlake and there is a written agreement with Ms. Spears which is dated December 1999 and it reflects only a single donation of $25,000 for the Britney Spears Foundation with no further obligations. [4]  There is no claim against anyone for breach of any contract.

The Complaint asserts that Steverson breached his fiduciary duties as a director of GBF in a number of respects. First, by 'insisting' that GBF hire one John McMahon at $4000 per month from May to August 2001, and by being furious when McMahon was discharged. (Compl. ¶ 16 a-i). Second, by allegedly telling defendant Biggar that she did not have to sign a non-compete agreement sought by GBF, after she had moved to New York and opened a New York office for GBF at the office of R & B with the agreement of GBF. (Compl. ¶ 16 f). Third, by some unspecified involvement in the actions of the others in late 2001 in the closing of the foundations of the performers at GBF and opening 'competing foundations' for them.   (Compl. ¶ 16 g-m). It appears that the conduct alleged regarding McMahon and Biggar (Compl. ¶ 16 a-f) is unrelated to any damage claim.  Based on the assertion that Steverson breached fiduciary duties owed to GBF, the Complaint asserts 13 claims for relief seeking almost $15,000,000 in damages.

---

[4]   That agreement and the letter of plaintiffs counsel sent with the Complaint are submitted as part of this motion. On a motion under Rule 12 (b) (6) the Court may consider documents outside the pleading when incorporated into, explicitly relied upon or "integral" to the complaint. See Blackstone Realty LLC v. FDIC, 244 F.3d 193, 195 (1st Cir. 2001); Fudge v. Penthouse Intl. Ltd. , 840 F.2d 1012, 1015 (1st Cir.), cert. denied, 488 U.S. 821 (1988). "Although there is no requirement that the pleader attach a copy of the writing on which his action of defense is based[,]...when plaintiff failed to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." Fudge, at 1015, quoting, 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327 at 489 (1969). The Court's consideration of documents that are integral to the claim is proper and does not convert the motion to dismiss into a motion for summary judgment. See Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001); Clorox Co. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000).

R & B is sued for facilitating Mr. Steverson's conduct and vicariously because he was an employee of R &B. (See e.g. Counts II, III and IV). Without any allegation of wrongful conduct on his part, Rudolph is also a named defendant. Biggar's refusal to sign a non-compete, resigning from GBF and later agreeing to work for the new foundations are alleged to breach her fiduciary duties (Count V) for which the other defendants are sued as aiders and abettors (Count VI). Interference with contractual and business relations, trademark violations, conversion and deceptive trade practices are also alleged.

<b>ARGUMENT</b>

**I.**     **THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS**

**A.**     **The Standards On A Motion To Dismiss For Lack Of Personal Jurisdiction**

The Complaint (¶ 6) conclusorily refers to Mass. G.L ch 223A §§ 3 (a) (c) and (d) but is otherwise devoid of any allegation which supports the assertion of Massachusetts jurisdiction. Affidavits of each defendant demonstrate that none of them have the contacts with the Commonwealth which would justify the exercise of jurisdiction over them.

On a motion to dismiss for lack of personal jurisdiction the plaintiff bears the burden of proving that jurisdiction exists. See Massachusetts School of Law v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998), cert. denied, 522 U.S. 907 (1997); Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). Specific facts affirmatively alleged are taken as true and construed in the light most favorable to the jurisdictional claim. See Ticketmaster, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court then adds to the mix facts put forward by the defendants, to the extent that they are uncontradicted. See Topp v. Compare, Inc., 814 F.2d 830, 836-37 (1st Cir. 1987). The Court is not required to "credit conclusory allegations or draw farfetched inferences." Ticketmaster, 26 F.3d at 203.

Personal jurisdiction is constrained by both the long-arm statute of the forum state and the Due Process Clause. See Lyle Richards Int'l v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). "Compliance with the federal constitutional standard involves a somewhat more extensive showing" than compliance with the Massachusetts long-arm statute. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). A defendant must have sufficient "minimum contacts" with the forum state so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" Burger King Corporation v. Rudzewicz, 471 U.S. 462, 471-472 (1985).

## B. There Is No General Jurisdiction

General jurisdiction "exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nonetheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Callahan v. Harvest Board Int'l, Inc., 138 F. Supp. 2d 147, 158 (D. Mass 2001), *quoting*, United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). The test for general jurisdiction is considerably more stringent than that applied to specific jurisdiction cases. See Callahan, 138 F. Supp 2d. at 158, *quoting*, Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998). General jurisdiction requires contacts which are "sufficiently continuous and systematic" that the assertion of jurisdiction is "reasonable and just". See Callahan, 138 F. Supp. 2d at 158, *quoting*, United States v. Swiss Am. Bank Ltd, 116 F. Supp. 2d 217, 223 (D. Mass 2000), *citing,* Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Foster Miller, Inc., 46 F.3d at 144.

GBF cannot meet this standard. Rudolph & Beer is a law firm with its principal place of business in New York with only de minimus revenues from Massachusetts. Rudolph is a New York resident and a member of the bar of the state of New York. Steverson is an attorney with his usual place of business in New York and a member of the bar of the state of California. Biggar was a New York resident at the time of the relevant events. The Complaint provides no basis for general jurisdiction and the affidavits negate any such claim.

## C.    There Is No Specific Jurisdiction

In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction. See Mass. School of Law, supra. 142 F.3d at 34. "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded on those activities." Id. To rely on specific personal jurisdiction a plaintiff must satisfy two cornerstone conditions: "First, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the constitution." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995). The latter condition implicates three distinct components:

> *First*, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum activities. *Second,* the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. *Third*, the exercise of jurisdiction must, in light of [these] factors, be reasonable. Id.

Courts "customarily look to whether the plaintiff has established cause in fact (i.e. the injury would not have occurred but for the defendant's forum-based activity) and legal cause (i.e. the defendant's in state conduct gave birth to the cause of action..)" Mass. School of Law, 142

F.3d at 36 (quotations omitted). The Court there held that without more of a substantial nexus, the extension of such jurisdiction based on a single meeting in Boston would violate due process. Id.; Kleinerman v. Morse, 26 Mass. App. Ct. 819, 825 (1989) (where New York defendants attended a couple of meetings in Massachusetts, the Court could plausibly arrive at the conclusion that they had not availed themselves purposefully of the privileges of conducting business in Massachusetts); see also Callahan, supra 138 F. Supp. 2d at 165; Barrett supra 239 F.3d at 27.

None of the moving defendants have engaged in the requisite conduct or could have reasonably foreseen being haled into a Massachusetts court.

## II. THE STANDARDS ON A MOTION TO DISMISS FOR FAILURE TO STATE CLAIM

### A. The Court Is Not Bound By Conclusory Or Non-Factual Allegations

In ruling on a 12(b)(6) motion, the Court must accept all well-pled factual averments as true, and draw all reasonable inferences therefrom in plaintiff's favor. See Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). The Court is not however, required to accept every allegation made by the plaintiff no matter how conclusory or generalized. See Guckenberger v. Boston University, 957 F.Supp. 306, 313 (D. Mass. 1997). The Court is obliged neither to "credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions or outright vituperation", nor to honor "subjective characterizations, optimistic predictions or problematic suppositions." See Day v. Fallon Community Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996), *quoting* Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir 1990). The opinions have established that "Rule 12(b)(6) is not entirely a toothless tiger." Dartmouth Review, 889 F.3d at 16. "Minimal requirements are not tantamount to non-existent requirements. The threshold [for stating a claim] may be low, but it is real". Gooley v. Mobile Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). Plaintiffs are obligated to set forth in their

complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Id. at 515.

## B. The "Contractual" Allegations Are Particularly Unavailing To Plaintiff

The Complaint is largely predicated on the existence of unparticularized understandings or promises by the two performers for the benefit of GBF (e.g. Comp ¶ 7, 8, 9, 14). As noted, the single written Donor Agreement does not reflect any continuing obligations to or rights of, GBF which could have been lost and it precludes vague contractual claims.

Controlling precedents as to contractual obligations and pleading requirements establish that the very vague allegations of the Complaint do not suffice to indicate that any contracts existed or were enforceable by GBF. See e.g. Giuliano & Lett v. Nations Title, 1998 U.S. App. LEXIS 1136 at *13 (1st Cir. 1998) (unpublished opinion); Held v. Zamparelli, 13 Mass. App. Ct. 957, 958 (1982); Saxon Theatre Corp. v. Sage, 347 Mass. 662, 666 (1964); Kaufman v. Lennox, 265 Mass. 487, 451 (1929).

Moreover, even if the plaintiff was able to establish the existence of an enforceable contract, it would clearly be a contract terminable at will by either of the parties. Under Massachusetts law, a contract without a durational term is terminable at will by either party upon reasonable notice. See Serpa Corp. v. Mcwane, Inc., 199 F.3d 6, 18 ( 1st Cir. 1999); Teitelbaum v. Hallmark Cards, Inc., 25 Mass. App. Ct. 555, 560 (1988).

## III. THE RIGHT AND DUTY TO ADVISE THEIR CLIENTS PRECLUDE THE CLAIMS HERE ASSERTED AGAINST THE LAWYER DEFENDANTS

The Complaint asserts that after the McMahon events created tension, (but did not injure plaintiff) the two performers set up personal foundations outside the GBF with the assistance of their lawyers. It is not suggested that any such advice was inconsistent with the interests of these clients, and Massachusetts law makes it clear that the duty of lawyers to give such advice is paramount to alleged duties to others.

The relation of attorney and client is highly fiduciary in nature. See Dunne & Others v. Cunningham, 234 Mass. 332, 333 (1920); Goldman v. Kane, 3 Mass. App. Ct. 336, 340 (1975). "Unflinching fidelity to [a client's] genuine interests is the duty of every attorney to his clients. Public policy hardly can touch matters of more general concern than the maintenance of an untarnished standard of conduct by the attorney at law toward his client." Berman v. Coakly, 243 Mass. 348, 354 (1923). Where an attorney is also under a duty to a client, the Courts are not prepared to allow this to be affected by any potentially conflicting duty to non-clients. See Page v. Frazier, 388 Mass. 55, 65 (1983); Logotheti v. Gordon, 414 Mass. 308, 312 (1993) (court shall not impose conflicting duties on attorneys); Spinner v. Nutt, 417 Mass. 549, 554 (1994). In Spinner, an attorney represented a group of trustees and the Court held that the potential for conflict prevented the imposition of any duty upon the attorney to the trust beneficiaries. Id.; see also Lamare v. Basbanes, 418 Mass. 274, 276 (1994) (where no attorney-client relationship exists, a duty of care will not be imposed on the attorney to a non-client where such a duty would potentially conflict with the duty the attorney owes to his or her client). In sum, an attorney's duty to third parties is circumscribed and limited by the law as well as the disciplinary rules governing attorney conduct. See Schlecht v. Smith, 1994 U.S. Dist. LEXIS 16167 at *15 (D. Mass. 1994).

As we demonstrate infra Section IV, if any arguable claimed breach of fiduciary duty could be inferred from this pleading, it would be only by stretching Rule 12 (b) (6) to its limits. Manifestly no such claim can be found to be viable if it was based on the proposition that such a duty required the lawyer defendants to fail to advise their clients as they deemed appropriate.

## IV. THE CONDUCT HERE ALLEGED CANNOT BE FOUND TO BREACH ANY FIDUCIARY DUTY TO GBF

### A. A Claim Of Breach Of Fiduciary Duty Requires Some Showing of Self Dealing

Counts I-VI are all based on conclusory assertions that some conduct which GBF didn't like thereby became an actionable breach of fiduciary duty. Much more is needed to establish such a claim. Under Massachusetts law, it is a "basic principle" that officers and directors owe a fiduciary duty to protect the interests of a corporation. See Cecconi v. Cecco, Inc., 739 F. Supp.. 41, 45 (D. Mass 1990); Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 736 (1st Cir. 1982), cert. denied, Consolidated Services Corp. v. Robinson, 459 U.S. 1105 (1983). Directors owe the corporation both a duty of care and a duty of loyalty. A director must therefore be loyal and they may not place their interests above those of the corporation. See Nickless v. Golub, 152 B.R. 394, 401 (Bankr. D. Mass 1993).

Under the corporate opportunity doctrine, if an officer or director diverts a corporate opportunity or advantage that belongs to the corporation to himself, for his own personal benefit, he breaches his duty of loyalty to the corporation. See Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 528 (1997); In re Safety Int'l, Inc., 775 F.2d 660, 662 (5th Cir. 1985). Massachusetts law has applied a "Fundamental Fairness Test" to determine which ventures rightfully belong to a corporation and are subject to the corporate opportunity doctrine. See Demoulas, 424 Mass. at 529.

Controlling authorities indicate that to state such a claim it must be shown that a director has placed his personal gain ahead of the best interests of the corporation to which he has a fiduciary obligation. See McCall v. Scott, 239 F.3d 808, 825 (6th Cir. 2001) (the mere fact that stocks were traded by an officer or director does not establish a breach of the duty of loyalty); British Printing & Comm. Corp. v. Harcort Brace Jovanovich, Inc., 664 F. Supp. 1519, 1530

(S.D.N.Y. 1987). In British Printing, the Court held that the burden of proving that corporate directors have breached their fiduciary duty requires the plaintiff to make a showing of self-interest on the part of the directors. Id.; Crouse-Hinds Co. v. InterNorth, Inc., 634 F.2d 690, 701-04 (2d Cir. 1980); American Inv. Co. v. Lichtenstein, 134 F. Supp. 857, 863 (E.D. Mo. 1955). (Defendant-director did not divert a corporate opportunity because the acquisition of another company was not essential, nor of great importance, to the corporate business success); Puritan Medical Ctr. v. Cashman, 413 Mass. 167, 177 (1992). (Defendant-director had not breached his fiduciary duties to the corporation where his property interest in the leased premises predated the corporation's incorporation and his "opportunity" to renew the lease for his own benefit was completely independent of his role as director of the corporation).

## B. The Allegations Regarding Steverson's Conduct Do Not Amount To a Breach Of Any Duty To GBF

There is nothing in this case which suggests that Steverson acted in a manner which would be a breach of fiduciary duty under the standards of these cases. The Complaint does not allege that Steverson diverted to himself any commission for administering funds which GBF could have earned. It is made explicit in the Complaint that the separation involved actions by other lawyers for Spears and Timberlake, without any adverse statement about GBF. (Comp. ¶ 16 r-f). The pleading sets forth no action by Steverson, no independent benefit to any of the lawyers and no breach of any contract with GBF by them or others. To the extent there is an implication that other dealings may have created differences between GBF and others, it is neither relevant nor surprising that other avenues for charitable work would be sought. Manifestly, the kind of conduct elsewhere found violative of a breach of fiduciary duty does not indicate that the doctrine is here applicable and no authority has ever suggested that a member of a charitable board cannot serve on other boards or assist other charitable pursuits, when the

overwhelming duty of lawyers to advise their clients is also involved. No actionable or other relevant conduct by Steverson is alleged.

### C. The Claim Against Biggar (Count V) Is Particularly Unseemly And Untenable

Ms. Biggar was an employee of GBF who was not subject to any employment or other contract. (Compl. ¶ 16 j). With the approval of GBF, she moved to New York to work for GBF at a new office established at R & B. She resigned from GBF and later came to be employed by the independent foundations. It is conclusorily alleged that unspecified conduct at unspecified times (Compl., Count V ¶¶ 30-32) was a breach of her fiduciary duty to GBF. No trade secrets are involved and no wrongful conduct while an employee is alleged.

## V. NO CLAIM IS STATED REGARDING R & B OR RUDOLPH

In addition to the absence of personal jurisdiction, the absence of a claim against Steverson bars the claims against R & B and Rudolph. (Counts II, III, IV, VI et seq). There is no allegation of any duty to GBF or of any wrongful conduct by the defendants. (See Compl. ¶¶ 25, 27, 29, 34). In fact, the only conduct involved is assisting their clients in establishing their own charitable foundations. ( Compl. ¶ 16 (s) and (t)).

### A. There Is No Vicarious Liability Claim Against R & B

An employer may be held vicariously liable for an intentional tort committed by an agent or an employee within the scope of the employment. Veranda Beach Club Ltd. v. Western Surety Co., 936 F.2d 1364, 1376 (1st Cir. 1991); Worcester Ins. Co. v. Fells Acres Day School, Inc., 408 Mass. 393, 405 (1990). The Massachusetts Supreme Judicial Court established a test for determining scope of employment questions:

> Conduct of an agent is within he scope of employment if it is the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer.

Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859-60 (1986); Restatement (Second) of Agency § 228 (1958). In this case, there are, however, no allegations of any of these elements which would create vicarious liability.

**B.     Rudolph Is Not Vicariously Or Otherwise Liable For Anything**

No wrongful or other conduct by Rudolph is alleged. Rudolph is neither an employer of Steverson nor liable for obligations of the limited liability partnership which employed him. His status as a partner in R & B does not make him liable for its obligations, if any. See N.Y. Partnership Law § 26(c) ; Lewis v. Rosenfeld, 138 F. Supp. 2d 466, 477 (S.D.N.Y. 2001).

**C.     Plaintiff's Causes Of Action For Aiding And Abetting Against Rudolph & Beer, LLP And Rudolph Are Also Deficient As A Matter Of Law**

Counts IV and VI base claims for "aiding and abetting" on the most conclusory statements which also assume wrongful conduct by others. In order to successfully sustain an aiding and abetting claim, the plaintiff is required to establish that (1) the director breached his or her fiduciary duty to the Corporation; (2) the non-fiduciary defendants had actual knowledge of the alleged breach and; (3) they substantially assisted or encouraged the alleged breach. See Brandt v. Hicks, Muse & Co. (In re Healthco Int'l., Inc.), 213 B.R. 784, 789 (D. Mass 1997) (Court dismissed aiding and abetting claim where there was no underlying breach of fiduciary duty by the director, and noted that even if one had been found there was no credible evidence that the defendant knowingly participated therein). A plaintiff must plead specific facts showing the defendant knowingly participated in a fiduciary's breach; a conclusory statement is not enough. See Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.), 208 B.R. 288, 309 (Bankr. D. Mass 1997), citing, In re Santa Fe Pac. Corp. Shareholder Litigation, 669 A.2d 59, 72 (Del. 1995); Solash v. Telex Corp., 1988 Del. Ch. LEXIS 7, at *12 (1988). The plaintiff must show that the defendant knew of the breach and actively participated in it, such that he or she could not reasonably be held to have acted in good faith. See Spinner v. Nutt, 417 Mass. 549, 556 (1994);

Banks v. Everett Nat'l Bank, 305 Mass. 178, 182 (1940). In Spinner, the Court held that the allegations that the plaintiff's trustees acted under the legal advice of the defendants, without more, was insufficient to give rise to a claim that the defendants actively participated in a breach of the trustees' fiduciary duties. Spinner, 417 Mass. at 556-557.

## VI. GBF'S CLAIMS FOR INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONS ARE DEFICIENT AS A MATTER OF LAW

### A. GBF Fails To State A Claim For Interference With Contractual Relations

In Count VII plaintiff asserts that all of the defendants interfered with its contractual relations with McMahon to the detriment of GBF. This is a curious claim since GBF didn't want to hire McMahon and it fired him. (Compl. ¶ 16 a, i, o). In Count VIII it is alleged they interfered with the unspecified contract with Spears and Timberlake which has not been breached. Neither circumstance provides a basis for this claim.

The elements of a claim of tortuous interference with contractual relations are: (i) the existence of a contract with a third party; (ii) the defendant knowingly induced that party to breach the contract; (iii) the defendant's interference was intentional and improper in motive or means ; and (iv) the plaintiff was harmed by defendant's actions. See Cigna Fire Underwriters Co., v. Macdonald & Johnson, Inc., 86 F.3d 1260, 1267 (1st Cir. 1996); see also, United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990).

As noted, the McMahon contract was one the plaintiff was apparently pleased to end and there is no damage. The complaint suggests more damage for its creation than its 'breach'. Regarding the performers, as in Cigna Fire Underwriters, there was no underlying contract with the third party and no breach. The Court there held that a "long-standing business relationship does not become a contractual relationship automatically." Cigna Fire Underwriters, 86 F.3d at 1267. The Court reasoned that it need not go further than the lack of a contract in order to dismiss a claim for intentional interference with a contractual relation. Id; see also American

Private Line Services, Inc. v. Eastern Microwave, Inc., 980 F.2d 33, 35 (1st Cir. 1992) (under Massachusetts law, to prove intentional interference with contractual relations, the plaintiff must first show the existence of a contract); Export Lobster Co. Inc. v. Bay State Lobster Co., Inc., 1994 Mass. Super. LEXIS 90, at *23 (1994) (because the plaintiffs concede that the third parties were at will employees, there was no contract that defendant could have broken. Thus, the plaintiff's claim for intentional interference with contractual relations failed on this ground alone).

In addition, plaintiffs do not and cannot allege that the acts here described had an improper motive or constituted improper means. See G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 273 (1991); United Truck Leasing Corp., 406 Mass. at 816-817, *citing* Restatement (Second) of Torts § 767 (1979).

### B.    GBF Fails To State A Claim For Tortious Interference With Advantageous Business Relationships

Counts IX and X are based on interference with at will relations with the clients and Biggar. With respect to Biggar it amounts to the bizarre claim that hiring a former employee of GBF who had no contract was wrongful. With respect to Spears and Timberlake, it presumes that their relationship with GBF would "continue indefinitely" (Compl. ¶ 45) and that the defendants knew of that unusual duration.

To establish this claim, GBF "must plead and prove that the defendants (i) engaged in intentional and willful acts; (ii) calculated to cause damage to [GBF's] lawful business; (iii) with an unlawful purpose and without right or justification; (iv) thereby causing actual damages or loss." Scrpa Corp. v. McWane, Inc., *supra*, 199 F. 3d 6, 15 (1st Cir. 1999) (citations omitted). Further, "something more than the intentional interference is required to make out the tort." United Truck Leasing Corp., 406 Mass. at 815. The tort requires "actual malice" or "a spiteful, malignant purpose, unrelated to the legitimate corporate interest" of a defendant. See King v.

Driscoll, 418 Mass. 576, 587 (1994); Smith & Croyle, LLC v. Ridgewood Power Corp., 111 F.

Supp. 2d 77, 85 (D. Mass 2000). In Smith & Croyle, there was nothing suggestive of malicious

motive or "unlawful means" in defendant's post-termination dealings with plaintiff's ex-business

partner. Id. Even if a defendant interfered with a business relationship, a claim cannot be stated

unless such interference is intentional. See Baystate Techs. v. Bentley Sys., Inc., 946 F. Supp.

1079, 1093 (D. Mass. 1996); Serpa Corp., 199 F.3d at 24 (Court dismissed claim where there

was no evidence of an unlawful or improper motive, and there was nothing to indicate that

defendants' conduct was calculated to injure the plaintiff).

## VII.  GBF CAN HAVE NO RIGHTS TO PREVENT OTHERS FROM USING THEIR OWN NAMES

In Count XI, GBF apparently asserts that it was a violation of federal trademark law 15

U.S.C. § 1125 (a) to establish foundations using the names of Britney Spears and Justin

Timberlake. (Comp. ¶ 55). It is not suggested that the name of GBF is used.

That statute prohibits a person from using:

> (1) in connection with any goods or services, or any container for goods,
> uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
> affiliation, connection, or association or such person with another person,
> or as to the origin, sponsorship, or approval of his or her goods, services,
> or commercial activities by another person.

To succeed on a claim for under this section, it must be shown, inter alia that (i) plaintiff

owns rights in a mark which is entitled to protection; (ii) it made use of the mark in commerce;

and (iii) the alleged infringing mark is likely to cause confusion to consumers. See Yankee

Spirits, Inc. v. Gasbarro, 1998 U.S. Dist. LEXIS 22159 at *12 (D. Mass 1998); Boston Beer Co.

v. Slesar Bros. Brewing Co., Inc., 9 F.3d 175, 180 (1st Cir. 1993). The First Circuit has also

established that; the mark must (a) be used in commerce, (b) be nonfunctional and (c) be

distinctive. See I.P. Lund Trading v. Kohler Co., 163 F.3d 27, 36-43 (1st Cir. 1998). The critical characteristics of the 'marks' upon which GBF relies is the associations with the entertainers whose names are being used. GBF does not and cannot have the right continue to use those names or bar them from using their names. The most likely source of confusion would be if GBF sought to claim any such association.

The raising of money by these performers by and for foundations bearing their names cannot be confusing to anyone. Any Lanham Act violation will involve any effort by GBF to use the names of the performers or claim any continuing association with them.

## VIII.   THE CAUSE OF ACTION FOR CONVERSION IS ALSO DEFICIENT

Conversion is the "intentional interference and wrongful exercise of control, ownership or dominion over personal property which seriously interferes with the rights of another to control the property." Viron Int'l Corp. v. Baker Brothers/Sys., 1998 Mass. Super. LEXIS 23 at *18 (1998), *quoting* Alperin & Shubow, 14C Massachusetts Practice 20.51. The right to possession is the essential element of any conversion claim. Id.; Wujnovich v. Colcord, 105 N.H. 451, 453 (1964) (to recover property allegedly converted, plaintiff had the burden of proving title).

Here, plaintiff alleges that the defendants "have wrongfully diverted, retained and/or placed in the Competing Foundations, charitable contributions made to the Giving Back Foundations.[including] $100,000 raised through a July 29, 2001 charity event in Las Vegas." See Complaint, ¶ 16(v). The allegations that "upon information and belief" (Compl. ¶ 16v) some contributions were wrongfully retained by the defendants do not adequately assert plaintiff's title in the property, nor defendants' wrongful retention of those monies. Plaintiff is a mere conduit which has no right to these funds and the Complaint asserts nothing more than an alternate means of getting them to the proper donee.

## IX.    GBF CANNOT DEMONSTRATE ANY VIOLATIONS OF MASSACHUSETTS GENERAL LAW CHAPTER 93A

In a thirteenth count with no facts and a bare reference to the statute, plaintiff invokes M.G.L. c. 93A §§ 2 and 11 which prohibits unfair methods of competition and unfair or deceptive acts and practices in business transactions. Here none of the defendants compete with the plaintiff in its business of providing an umbrella foundation and related services for a fee. Indeed they do not compete at all.

Under the statute, even when applicable to acts of competitors, the allegedly offending conduct must "(1) fall within the penumbra of some common law, statutory, or other established concept of unfairness; (2) be immoral, unethical, oppressive or unscrupulous, and (3) cause substantial injury to the [other side]." Serpa Corp., supra, 199 F. 3d at 15 (internal quotations and citations omitted). Further, the conduct must "attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce, have an extortionate quality that gives it the rancid flavor of unfairness, or fall within at least the penumbra of some common-law, statutory, or other established concept of unfairness." Commercial Union Ins. Co. v. Seven Provinces, Ins. Co. Ltd., 217 F. 3d 33, 40 (1st Cir. 2000), cert. denied, 531 U.S. 1146 (2001) (internal quotations and citations omitted); D'Angelo v. Boston Red Sox Baseball Club Ltd., 2001 U.S. Dist. LEXIS 18233 at *7 (D. Mass. 2001). A simple breach of contract does not make out a Chapter 93A claim. See Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 103 (1979); Foss Manufacturing Company, Inc. v. Malden Mills Indus., Inc., 1999 Mass. Super. LEXIS 378 at *24-25 (1999).

GBF alleges that the conduct of the defendants "constitutes unfair and deceptive trade practices under G.L. c. 93A, §§ 2 and 11." See Complaint, Count XIII. Even assuming that GBF could establish what it has alleged, such conduct, even if construed as hostile to GBF and inimical to its interests, is not "so seriously deceptive and harmful" so as to permit recovery under

-19-

Chapter 93A. <u>Zayre Corp. v. Computer Sys. of Am., Inc.</u>, 24 Mass. App. Ct. 559, 570 (1987).

There is no allegation of "immoral, unethical, oppressive, or unscrupulous" conduct sufficient to

state a Chapter 93A claim. <u>See</u> <u>Bradley v. Dean Witter Realty , Inc.</u>, 967 F. Supp. 19, 29 (D.

Mass. 1997). In addition, there is no allegation that defendants willfully and knowingly

committed unfair and deceptive acts in violation of Chapter 93A.

## CONCLUSION

For the reasons stated herein, it is respectfully submitted that plaintiffs' Complaint should

be, in all respects, dismissed.

Respectfully submitted:

MARK STEVERSON. RUDOLPH & BEER, LLP,
LAURENCE H. RUDOLF and
CORINA BIGG AR,

By their Attorneys,

_____
Michael P. Duffy, BBO #137325
Paul T. Muniz, BBO #564786
Peabody & Arnold LLP
50 Rowes Wharf
Boston, MA 02110
(617) 951-2100

## CERTIFICATE OF SERVICE

I hereby certify that I mailed a true and accurate copy of the within to David S. Rosenthal,
Hutchins, Wheeler & Dittmar, 101 Federal Street, Boston, Massachusetts 02110, attorney of
record for the plaintiff.

April 5, 2002                    _____