D

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2002 JUL -3 A 11: 08

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| THE GIVING BACK FUND, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARK STEVERSON, RUDOLPH & BEER, LLP, LAURENCE H. RUDOLPH and CORINA BIGGAR, <br><br> Defendants. | CIVIL ACTION NO. 02-104446-RWZ |

# SUMMARY OF MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS







Pursuant to this Court's Order on June 17, 2002, plaintiff The Giving Back Fund, Inc. ("GBF") submits this summary of its Memorandum of Law in Support of its Opposition to Defendants' Motion to Dismiss previously filed on May 31, 2002. In defendants' original motion to dismiss and their reply memorandum of law, defendants seek dismissal of this matter on the bases that this Court lacks *in personam* jurisdiction over them and that GBF has failed to state a claim upon which relief may be granted. Neither claim has any merit, as detailed in plaintiff's original memorandum in opposition ("Pl.'s Mem.") and defendants' motion should, accordingly, be denied.

## STATEMENT OF THE CASE

This is a classic case of breach of fiduciary duty by a director of a Massachusetts charitable corporation, and the aiding and abetting of that director's breach of his duty by the director's employers and colleagues. The director, defendant Mark Steverson, sought out GBF in Massachusetts to assist him and his celebrity clients in their philanthropic endeavors. At first, he assisted GBF, participating in GBF Board of Directors ("Board") meetings, making introductions and doing a presentation to a prospective GBF client. But he later turned on GBF, and **while still a member of its Board**, committed a series of acts – alleged with specificity in the Complaint and the affidavit of Marc Pollick, GBF's president – which were clearly disloyal to and damaged GBF. In doing so, Steverson acted with the knowledge, consent and active participation of his employer Rudolph & Beer and a named partner in that firm Laurence Rudolph. Together, they improperly interfered with and, in fact, sabotaged GBF's valuable business relationship with two of its most important celebrity clients, Britney Spears and Justin Timberlake, to benefit themselves at the expense of GBF. **Most significantly: they did all this**

**while Steverson was a director of GBF.** The impropriety of their tortious conduct could not be clearer.

## I. THIS COURT HAS PERSONAL JURISDICTION OVER ALL OF THE DEFENDANTS.

As detailed in plaintiff's initial memorandum, GBF has met its burden in establishing *in personum* jurisdiction over all named defendants.[1] (Pl.'s Mem. 2-11.) The Complaint is replete with properly pled allegations that amply justify this Court's assertion of personal jurisdiction over all four defendants. These allegations are further bolstered by the affidavit of Mr. Pollick which avers numerous specific facts that establish the purposeful contacts all defendants had with the Commonwealth and the relationship of those contacts to the claims in GBF's Complaint. Indeed, defendants' failure to incorporate into their argument any specific facts demonstrating a lack of personal jurisdiction belies any real basis for their motion.

Here, defendants' respective relationships with GBF and their business and tortious conduct -- which are the basis of this suit -- are inextricably tied to Massachusetts.[2] In summary:

---

[1] To establish personal jurisdiction over the defendants GBF need only affirmatively allege specific facts that would establish this Court's jurisdiction over them. (See Pl.'s Mem. at 3-4 (collecting cases).) Defendants appear to fundamentally misunderstand this burden. (See Defendants' Reply Mem. at 4 (arguing that GBF has a "significant and substantive procedural requirement" to meet in establishing personal jurisdiction.)) Contrary to defendants' wholly unsupported argument, every case cited by defendants makes clear that a plaintiff establishes personal jurisdiction by simply alleging specific facts in the Complaint and supporting those allegations by appropriate affidavits that demonstrate a nexus between a defendants' actions and the forum state. See Barrett v. Lombardi, 239 F.3d 23, 26-27 (1st Cir. 2001) (requiring court to accept plaintiff's proffer of "competent evidence of specific facts . . . at face value."); Noonan v. Winston Co., 902 F. Supp. 298, 300, 300 n.1 (D. Mass. 1995) (referring to "well supported facts" and citing Chlebda v. H.E. Fortna & Bro., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979) as requiring a plaintiff to "go beyond the pleadings [i.e., by affidavit] and make affirmative proof").

[2] Due to the nature of Mr. Steverson's employment relationship with Rudolph & Beers (he was an associate in and an employee of the firm), he acted as Rudolph & Beer's agent and employee. (Declaration of Mark Steverson ¶ 1). As such, Rudolph & Beer is responsible for Mr. Steverson's action under the doctrine *respondeat superior*, and is subject to the jurisdiction of this Court if Mr. Steverson is subject to its jurisdiction. See Sawatelle v. Farrell, 70 F.3d 1381, 1389 n.4 (1st Cir. 1995) ("Under elemental principals of agency, the contacts of [attorneys] . . . are attributable to . . . [their] firm[.]") (citation omitted).

- Laurence E. Rudolph initiated contact with GBF in Massachusetts to establish a public charity to be administered by GBF on behalf of his client, Britney Spears. (Affidavit of Marc Pollick ("Pollick Aff.") ¶ 6);

- Mr. Rudolph traveled to Massachusetts in August, 2000, for the first GBF/Britney Spears Foundation sponsored camp. He came to Massachusetts again in August, 2001, where he attended a GBF/Britney Spears Foundation sponsored event, met with Mr. Pollick, and specifically promised to address problems GBF was having with John McMahon and Mark Steverson. (Id. at ¶ 22; Complaint at 16 (m));

- Mr. Rudolph spoke with Mr. Pollick and insisted that GBF hire Mr. McMahon, a man with little to no charitable organization or fundraising experience, at GBF's cost. (Complaint ¶ 16 (a));

- Mr. Rudolph utilized his business relationship with GBF and Mr. Steverson's position as a member of the Board to successfully solicit other Board members to contribute over half of the sponsorship cost for a Starlight Room at Shriner's Hospital in Chicago that was designated as the Britney Spears Starlight Room, and afforded no credit to the Board members who contributed the majority of necessary funds. (Pollick Aff. ¶ 16);

- Mark Steverson first initiated contact with GBF in Massachusetts to establish a public charity to be administered by GBF on behalf of his client Justin Timberlake. (Pollick Aff. at ¶ 7);

- Over a period of nearly two years, Mr. Steverson communicated with GBF's Massachusetts offices and personnel, both by telephone and e-mail, on average several times per week with respect to the establishment and day-to-day activities of the Spears and Timberlake Foundations at GBF. (Id. at ¶¶ 8, 10). In doing so, he was acting as the employee and/or agent of Rudolph & Beer and Rudolph. (Pollick Affidavit, ¶ 7);

- Mr. Steverson sought out and accepted a position on GBF's Board in March, 2000.[3] (Id. at ¶¶ 10-11; Complaint ¶ 13);

- Mr. Steverson made a presentation to the GBF Board about how he could help the organization work with young celebrities to maximize their charitable giving potential. (Pollick Aff. at ¶ 13; Complaint ¶ 14);

---

[3] There are no "ceremonial" directors on the GBF Board. (Pollick Aff. ¶ 4; cf. Steverson Declaration ¶ 3). The defendants apparently recognize that Steverson's serving on the Board of GBF is fatal to their jurisdiction arguments, and have therefore concocted the concept of a "ceremonial director." Steverson purposefully availed himself of the privilege of conducting business in Massachusetts by becoming a full director of GBF, and by the other activities he engaged in on behalf of GBF and his rock star clients in Massachusetts. (Pollick Aff. ¶ 17.) The statements he makes in paragraph 3 of his "Declaration" are simply not true.

- Mr. Steverson attended two meeting of the GBF Board and served as a member of the Board until January 31, 2001, enjoying all the privileges and duties associated with Board membership of a Massachusetts corporation. (Pollick Aff. at ¶¶ 12, 14);

- Mr. Steverson attended a meeting in Los Angeles in his capacity as a Board member to solicit funds from a potential new celebrity client. (Pollick Aff. at ¶ 17). During that same trip Mr. Steverson solicited and obtained $40K worth of pro bono services for GBF from a top brand identity company. (Id. at 18);.

- Mr. Steverson utilized his position as a member of the Board to solicit and obtain various benefits for himself, Rudolph & Beer, Britney Spears and Justin Timberlake. Mr. Steverson directly benefited from this by enhancing his reputation with his clients, and, but for his position on the Board, would not have received such benefit. (Id. at ¶ 15);

- On several occasions Mr. Steverson directed communications into Massachusetts threatening to "pull the plug" on the Spears and Timberlake foundations ("Foundations") if GBF did not accede to his demands. (Id. at ¶¶ 19-20; Complaint ¶¶ 16(a) and (f));

- After insisting that GBF hire John McMahon, despite his total lack of qualifications, Mr. Steverson disrupted and interfered with GBF's contractual relationship with Mr. McMahon. One of these conversations took place in Boston. (Complaint ¶¶ 16 (a) and (f); Pollick Aff. at ¶ 20);

- Mr. Steverson traveled to Boston on at least two occasions to transact business specifically relating to GBF and the Foundations during which his actions resulted in harm to GBF. (Pollick Aff. at ¶¶ 19-20);

- Mr. Steverson directly interfered with GBF's employment relationship with Corina Biggar while still a member GBF's Board by, among other things, telling her not to sign GBF's standard employment contract. (Complaint ¶ 16 (j));

- Ms. Biggar was employed by GBF and worked in its Boston office on a full-time basis from March, 2000 through June, 2001. (Pollick Aff. at ¶ 24; Complaint ¶ 5);

- When Ms. Biggar moved to New York City in July, 2001, she continued her full-time employment relationship with GBF, reporting to her supervisors in Boston. (Pollick Aff. at ¶ 26; Complaint ¶ 16 (j));

- While working in New York for GBF, Ms. Biggar's payroll and benefits were administered from GBF's offices in Boston. (Pollick Aff. at ¶ 30); GBF continues to administer her health insurance to this day under COBRA;

4

- While working in New York for GBF, Ms. Biggar submitted weekly reports to Boston concerning her activities on behalf of GBF. (Id. at ¶ 29.)[4]

Consistent with the case law cited in plaintiff's original memorandum, the above allegations satisfy the Massachusetts Long-Arm Statute, G.L. c. 23A §§ 3(a) and (c), because : (1) defendants transacted business or caused tortuous injury in Massachusetts; and (2) but for defendants' choice to seek out and enter into their respective relationships with GBF in Massachusetts and their tortious actions and communications into Massachusetts in connection therewith, this action would not have arisen. (See Pl.'s Mem. at 7-10 (collecting cases).) The above allegations also satisfy the due process requirements for personal jurisdiction under the United States Constitution because: (1) the claim relates to the defendants' Massachusetts contacts; (2) the in-state contacts represent purposeful availment of the privilege of conducting activities in the Commonwealth; and (3) the exercise of jurisdiction is reasonable. (See Pl.'s Mem. at 10-11 (collecting cases).) Since defendants' personal jurisdiction argument is not supported by either fact or law, the motion to dismiss on jurisdictional grounds should be denied.

## II. THE GIVING BACK FUND HAS PROPERLY PLED CLAIMS AGAINST ALL DEFENDANTS.

Defendants' second contention, that GBF has failed to state a claim upon which relief may be granted, is as meritless as their personal jurisdiction argument. Defendants' primary basis for this contention, that GBF's claims are based on "conclusory assertions," fundamentally misunderstands a plaintiff's obligations under Fed. R. Civ. P. 8 and 12, and is simply not correct. Indeed, the only question before this Court in ruling on defendants' motion to dismiss, "is whether those statements [the allegations in the complaint] if true, form the basis for a claim

---

[4] Importantly, none of these specific facts have been disputed by Mr. Steverson or Mr. Rudolph in their original or substitute Declarations, or by Ms. Biggar in her affidavit. The conclusory statements in those documents do not rebut the specific jurisdictional facts provided by GBF.

5

under the Rule." In re Digital Equip. Corp. Sec. Litig., 601 F. Supp. 311, 313 n.2 (D. Mass. 1994). As demonstrated below, GBF's very detailed Complaint is more than sufficient to meet this standard.

### A. COUNT I – BREACH OF FIDUCIARY DUTY, AGAINST STEVERSON.

#### 1. GBF Has Pled Sufficient Facts Demonstrating Steverson's Breach of His Fiduciary Duty.

Defendants concede that as a director of GBF, Mr. Steverson had a fiduciary duty to the GBF. They acknowledge that this duty includes both a duty of loyalty and a duty of care. (See page 11 of Defendants' Memorandum). Numerous authorities support this well-established duty, in addition to those cited by the defendants. (See Pl.'s Mem. at 13 (collecting cases).)

The well-established principles of these cases set a standard of conduct for a corporate director that Steverson blatantly breached, as alleged in detail in paragraph 16 of the Complaint. Specifically, Mr. Steverson: (1) bullied GBF into hiring an unqualified John McMahon to raise funds for the Britney Spears and Justin Timberlake Foundations and to pay for his so-called services. (Complaint ¶¶ 16(a) and (b)); (2) took action which was contrary to the best interests of the company on whose Board he sat by refusing to allow McMahon to sign a contract with GBF and threatening "to pull both foundations from you [GBF] and you will never get another person from the music industry to do business with The Giving Back Fund." (Complaint ¶ 16(b)); (3) refused to take any action to control the improper and unauthorized conduct of McMahon, and, indeed, directed his activities in violation of his contract with GBF, taking affirmative actions to assist him and to usurp the valuable business relationships which existed between GBF and two of its most important celebrity clients. (Complaint ¶¶ 16(g-i), (k), (m)); (4) made good on his earlier threats to, together with his employer, terminate the valuable business relationship GBF had with Spears and Timberlake; and (5) retained monies raised at a

charity event which were intended for GBF. (Complaint ¶ 16(o), (r), (s), (t), (v)). Steverson committed all of these acts while he was a member of GBF's Board of Directors. Taken both singularly and together, these allegations – all of which were contrary to the best interest of GBF, and damaged GBF substantially – establish a clear breach of fiduciary duty by Steverson.[5]

    2. <u>Steverson Could Not Favor One Fiduciary Relationship At The Expense Of Another.</u>

Defendants also argue that Steverson's breach of fiduciary duty is somehow excused because as the attorney for Britney Spears and Justin Timberlake, he had a "paramount" fiduciary duty to them. Defendants cite no cases in support of this novel argument because none exist. Regardless of the duty Steverson owed to Spears and Timberlake, that duty did not leave Steverson free to ignore his duty to GBF when a conflict arose. <u>Robinson v. Watts Detective Agency, Inc.</u>, 685 F.2d 729, 736 (1st Cir. 1982) (Director liable for "failure to recognize his fiduciary duty.") If Steverson truly believed that he could not serve both "masters," he should have resigned from GBF's Board of Directors; he was not free to sabotage GBF.

 **B.** **COUNTS II AND III - VICARIOUS LIABILITY FOR BREACH OF FIDUCIARY DUTY AGAINST RUDOLPH & BEER AND RUDOLPH.**

Defendants concede that "[a]n employer may be held vicariously liable for an intentional act committed by an agent or an employee within the scope of his employment." (Defendants' Memorandum, page 13). Here, the standard for vicarious liability is easily met as: (1) the

---

[5] Defendants argue in their brief (at pages 11 and 12) that the Complaint is defective because it does not allege conduct which personally benefited Steverson or the other defendants, and that such "personal" benefit must be alleged to state a claim for breach of fiduciary duty. In fact, the Complaint does allege that the actions taken by Steverson, and those for whom he was working, were intended to and did benefit them personally. (Complaint ¶¶ 20, 25 and 27). In any event, the defendants are simply wrong, as a matter of law, in their contention that the tort of breach of fiduciary duty <u>requires,</u> as an essential element, proof that the breach took place to personally benefit the fiduciary. See <u>Durfee v. Durfee & Canning, Inc.</u>, 323 Mass. 187, 196 (1948) (director guilty of breach of fiduciary duty, and is liable for damages caused to his corporation, even if the profit from such breach is acquired by a third-party); <u>Production Machine Co. v. Howe</u>, 327 Mass. 373, 378 (1951). The Complaint specifically alleges a number of acts by Steverson which were clearly not in the best interest of GBF, as explained above.

7

Complaint specifically alleges that Steverson was, at all relevant times, an employee of Rudolph & Beer. (Complaint ¶ 3); (2) Steverson admits that he is an associate of that firm in his Declaration; and (3) GBF alleges that the partners of that firm – the men to whom associate Steverson reported – especially Rudolph, were aware of, participated in, and supported his improper activities with respect to GBF and McMahon. (Complaint ¶¶ 4, 15, 16, 16(a), 16(e), 16(h), 16(i), 16(j), 16(m), 16(r), 16(s), 16(t), 16(v), 16(w); Pollick Aff. ¶¶ 7, 22).[6] These facts are not disputed by defendants on the record before this Court.

### C. COUNT IV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY, AGAINST RUDOLPH & BEER AND RUDOLPH.

The claim for aiding and abetting breach of fiduciary duty is well-established under Massachusetts law. Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 172 (1991) (employer liable for its employee's breach of fiduciary duty to his former employer, because it knew of and participated in his breach); Spinner v. Nutt, 417 Mass. 549, 556 (1994). To state a claim for this tort, a plaintiff must allege that the defendant knew of the breach and actively participated in it. Id. That is exactly what GBF has alleged in the Complaint, with the specific facts discussed in Section II(B) of this memorandum.

The foregoing applies with equal force to Rudolph & Beer and Rudolph personally, for the reason explained in Section II(B) hereof.

---

[6] New York Partnership Law, §26(c) (cited by defendants), is not to the contrary: "each partner, employee or agent of a partnership which is a registered limited liability partnership shall be personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by him or her or by any person under his or her direct supervision and control. . . ." As alleged in the Complaint, Rudolph was fully aware of and endorsed Steverson's conduct, both by failing to reign in his associate and by actively participating in his conduct.

### D. COUNT V – BIGGAR'S BREACH OF FIDUCIARY DUTY

As an employee and former employee of GBF, Biggar also owed a fiduciary duty to GBF. See Augat, 409 Mass. at 172-73 (former employee owes continuing duty of loyalty to previous employer). The Complaint alleges (upon information and belief) that she participated in the wrongful conduct of Steverson, Rudolph and Rudolph & Beer. She was in a position to do so because she was working with Steverson, Rudolph and McMahon prior to and at the time Rudolph & Beer purported to terminate GBF's contractual relationship with Spears and Timberlake. (Affidavit of Corina Biggar, ¶ 2; Complaint ¶¶ 16(j), (r) and (s)). At this time, GBF does not know the extent of her involvement in these terminations and the undermining of GBF's relationship with Spears or Timberlake, but if she was involved and participated therein, that disloyalty would constitute a breach of her duty of loyalty to GBF, or aiding and abetting Steverson's breach of his fiduciary duty. GBF has stated both claims, and should not be precluded from proving these claims against Biggar by dismissal at this early stage of the litigation.

### E. COUNT VI – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (OF BIGGAR) AGAINST RUDOLPH & BEER AND RUDOLPH.

As alleged in the Complaint, Biggar was lured by Steverson to leave GBF in Boston, work out of the offices of Rudolph & Beer in New York and ultimately to resign to go to work on the competing foundations from the offices of Rudolph & Beer. (Complaint ¶ 16(j)). These allegations, if accepted as true, constitute a breach of fiduciary duty and Rudolph and Rudolph & Beer's active assistance in the commission of that breach renders them liable as aiders and abetters.

9

## F. COUNTS VII AND VIII – INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS AGAINST ALL DEFENDANTS.

In Counts VII and VIII of the Complaint, GBF sets forth sufficient, specific facts to state a claim for interference with contractual relationships. Count VII concerns the contractual relationship between GBF and McMahon, while Count VIII relates to the contractual relationships with Spears and Timberlake. Clearly, GBF has alleged specific facts with respect to each of these elements of the claims in Counts VII and VIII of the Complaint:

- With respect to Count VII, GBF has alleged that there was a contract between it and McMahon; that it reluctantly entered into this agreement on the condition that McMahon agree to terms which allowed GBF to control and monitor his activities; that McMahon refused to comply with these terms, acting in an unauthorized and inappropriate manner; that in doing so, he acted pursuant to the direction of Steverson and the other defendants; and that GBF was damaged as a result of the defendants' interference. (Complaint ¶¶ 16(c) through (i), (r), and (s), 36-37). The "improper means or motive" requirement is satisfied by the allegations that the defendants' conduct constituted a breach of Steverson's fiduciary duty as a director of GBF, for which the other defendants are liable either vicariously or by aiding and abetting the breach of fiduciary duty. (Complaint ¶ 41.). Thus, Count VII of the Complaint clearly states a claim for interference with the relationship between GBF and McMahon.

- With respect to Count VIII, GBF has alleged the existence of a contract with Spears and Timberlake, and their terms, of which the defendants had knowledge (Complaint ¶¶ 7 through 10, 40); the improper interference with those contracts by all of the defendants (Complaint ¶¶ 16, 41); and the significant damage done to GBF. (Complaint ¶¶ 10, 16(r), (s), and (v)). All of the essential elements of the interference claim have been plead with specific facts and in great detail.[7]

---

[7] Defendants' two specious arguments to the contrary are easily dismissed First, it is clear that contracts existed between GBF and both Spears and Timberlake, negating any argument that no contracts existed. (Complaint ¶¶ 7-10). Next, it is legally irrelevant whether those contracts were terminable at will. "It is well established that an existing **or even probable** future business relationship from which there is a reasonable expectancy of financial benefit is enough." Owen v. Williams, 322 Mass. 356, 361-62 (1948) (emphasis supplied). It was only because of the wrongful interference of the defendants that the relationships were sabotaged (Complaint ¶¶ 16(o), (r), (s), and (t)), and GBF had every reason to believe that the harmonious relationship existing between GBF and the celebrities would continue indefinitely. (See Pollick Affidavit, ¶¶ 13 and 19, and Exhibit A).

10

### G. COUNTS IX AND X - INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS.

Count IX alleges interference with GBF's valuable business relationships with Spears and Timberlake. Count X concerns interference with the advantageous business relationship which existed between GBF and Biggar.

The elements of this tort are the same as the elements of interference with contractual relationship, except that there need not be an actual contract in existence. Owen v. Williams, 322 Mass. 356, 361-62 (1948); United Truck Leasing v. Geltman, 406 Mass. 811, 815 (1990) (Plaintiff must plead and prove interference with a "business relationship or contemplated contract of economic benefit.") Accordingly, everything that has been written in Section II(F) of this memorandum with respect to Counts VII and VIII of the Complaint applies with equal force to the claims asserted in Counts IX and X.[8] Defendants do not make any substantially different arguments with respect to these claims.

### H. COUNT XI - VIOLATION OF 15 U.S.C. ¶ 1125(a) AGAINST ALL DEFENDANTS.

Defendants' argument with respect to Count XI of the Complaint is entirely misplaced, because GBF does not complain of Spears' or Timberlake's use of their own names alone. Rather, as alleged in paragraphs 16(w) and 55, Count XI complains of their solicitation of funds for the Rudolph & Beer-created competing foundations using the trade names and solicitation materials created by GBF, and their taking credit for charitable activities undertaken and

---

[8] Since Count X alleges interference with GBF's advantageous business relationship with Biggar, defendants make a slightly different argument as to this claim. They argue that since there was no contract between Biggar and GBF, there can be no interference claim. But as explained above, that statement of the law is simply

overseen by GBF, without providing any credit to GBF. This is "reverse palming off," prohibited by Section 1125(a) of the Lanham Act. (See Pl.'s Mem. at 28-29.) Defendants' solicitations are misleading to the public, which is making its decision to contribute to the competing foundation believing it was these entities that created and oversaw the programs to which they are contributing, when, in fact, it was GBF who had run these programs.

I. **COUNT XII - CONVERSION AGAINST ALL DEFENDANTS.**

In Count XII of the Complaint, GBF alleges that the defendants have obtained and wrongfully retained monies donated to GBF (see Pl.'s Mem. at 30 (setting out standard for conversion)), as alleged in paragraph 16(v) of the Complaint, and that the defendants have refused to turn over those monies despite GBF's demands therefor. (Complaint ¶¶ 58, 59). Paragraph 16(v) alleges specific facts as to the donation and retention of $100,000 donated for GBF at a charity basketball event in Las Vegas on July 29, 2001. GBF believes that other monies have been donated for GBF as well, through a solicitation in a book authored by Spears and her mother, and from other sources. All of this fund-raising was initiated or took place prior to the purported termination of the GBF foundations in October (Spears) and December (Timberlake). (Complaint ¶¶ 16(r) and (s)). The fact that the Misappropriated Funds are intended for charitable causes does not mean that GBF is not entitled to possession of them. This money clearly belongs to GBF, but the defendants have refused to deliver it to GBF. GBF is entitled to possess these funds, just as United Way or any other charity is entitled to receive, hold, and distribute charitable dollars contributed to it. GBF does not know the extent of these funds but has prayed for an accounting and the imposition of a constructive trust with respect to all of the Misappropriated Funds. (Complaint ¶ 16(v) and Prayer 1).[9]

---

[9] An accounting and imposition of a constructive trust are tried and true remedies for breach of fiduciary duty. Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 556 (1997).

12

### J. COUNT XIII - VIOLATION OF G.L. c. 93A, §§ 2 AND 11, AGAINST ALL DEFENDANTS.

Defendants' sole argument with respect to the Chapter 93A claim asserted in the Complaint is that the defendants' conduct is really not so bad after all. Perhaps that cavalier attitude, indicative of a fundamental misunderstanding of a fiduciary's duty to those who trust and rely upon him or her, is what led Steverson so far wrong in his dealings with GBF. Their bullying and threatening conduct, and the participation of the other defendants in conduct which was so inimical to the best interests of the company Steverson had a duty to serve with honesty and fidelity, was clearly "unethical, oppressive and unscrupulous" and hence a violation of G.L. c. 93A. PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). It is well established that active participation in a breach of fiduciary duty is a sufficient predicate for a Chapter 93A claim. See Augat, supra, 409 Mass. at 172, 177. n. 7 (aiding and abetting breach of fiduciary duty);[10] Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct, 153, 174 (1999)(aiding and abetting breach of fiduciary duty); Nader v. Citron, 372 Mass. 96, 102 (1977) (Breach of fiduciary duty claim states a claim under Chapter 93A against the individual who participated in the conduct at issue.).[11]

### III. CONCLUSION

For these reasons and based on the authorities cited herein, it is respectfully submitted that this Court has personal jurisdiction over each of the defendants, and that the detailed,

---

[10] In Nader v. Citron, 372 Mass. 96, 105 (1977), the Supreme Judicial Court wrote that "the existence of unfair acts and practices must be determined from the circumstances of each case. The particular factual nuances of each case may require elaboration through discovery and development at trial." (Internal quotation marks and citation omitted). This was written in the context of affirming the trial court's denial of a motion to dismiss a Chapter 93A claim under Mass. R. Civ. P. 12(b)(6).

[11] This case contains the additional claim of misrepresentation in the context of conduct which constitutes reverse palming off in violation of 15 U.S.C. § 1125(a), as explained in Section G of this memorandum. Such deceptive conduct is a clear violation of G.L. c. 93A (which prohibits unfair and deceptive conduct).

13

specific facts set forth in the Complaint are sufficient to state each of the claims in the Complaint. The Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

**THE GIVING BACK FUND, INC.**

By its attorneys,

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 7/2/02.

_David Rosenthal_
David S. Rosenthal (BBO #429260)
Gregg A. Rubenstein (BBO #639680)
Hutchins, Wheeler & Dittmar
101 Federal Street
Boston, MA 02110
(617) 951-6600

Dated: July 2, 2002

14